```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                        FORT MYERS DIVISION
```

AFI HOLDINGS OF ILLINOIS,
LLC d/b/a Happy Leaves,
Inc.,

    Plaintiff,

v.                            Case No: 2:17-cv-491-FtM-99CM

WATERMAN BROADCASTING, a
Florida corp., GRAHAM
HUNTER, LISA SPOONER, PETER
BUSCH, and JOSEPH DORN,
M.D.,

    Defendants.

_____

## OPINION AND ORDER

This matter comes before the Court on review of defendant Joseph Dorn, M.D.'s Motion to Dismiss (Doc. #27) filed on April 13, 2018. Plaintiff filed a Response in Opposition (Doc. #36) on April 30, 2018. For the reasons set forth below, the Motion is denied.

**I.**

On June 27, 2017, plaintiff AFI Holdings, LLC d/b/a Happy Leaves, Inc., ("AFI") filed suit in Lee County, Florida alleging defamation and commercial disparagement against Defendant Waterman Broadcasting ("Waterman"). The case was removed to the Middle District of Florida based on diversity jurisdiction. AFI filed an Amended Complaint (Doc. #22), adding the individual defendants.

AFI alleges that defendants' statements during WBBH-TV's July 1, 2016 segment on AFI's sales of the hemp oil extract "Charlotte's Web" on Groupon defamed AFI and disparaged its product.

The Amended Complaint alleges as follows: AFI d/b/a Happy Leaves distributes hemp oil extract for another company named CW Hemp, Inc., which manufactures "Charlotte's Web" in Colorado. (Doc. #22, ¶ 12.) Charlotte's Web is a commercially available full plant hemp extract. The active ingredient in Charlotte's Web is cannabidiol (CBD). CBD can be harvested from both hemp and cannabis. (Id., ¶ 13.) CBD oils harvested from hemp, such as Charlotte's Web, have very low levels of tetrahydrocannadion (THC) compared to those harvested from cannabis and they are not regulated in the same way. (Id., ¶ 14.) Plaintiff alleges that according to Florida Bill 893.02, which became effective on July 1, 2014, the term "cannabis" does not include any cannabis that contains 0.5 percent or less of THC and more than 15 percent of CBD. (Id., ¶ 15.) The Charlotte's Web hemp oil extract sold by AFI on Groupon contains less than 0.3 percent of THC and does not fall within the definition of "cannabis" under Florida law. (Id., ¶¶ 16, 18.) Hemp oil extract is separate and distinct from marijuana and marijuana oil extract is sold legally throughout all 50 states. Hemp oil extract is not "pot" or "medical marijuana" and industrial hemp products are currently distributed in

thousands of health and wellness stores across the United States. (Id., ¶¶ 17, 22.)

CW Hemp, Inc.'s business model allows for exclusive regional distributorships of Charlotte's Web.  Prior to July 2, 2016, AFI enjoyed an exclusive agreement with CW Hemp, Inc. to sell Charlotte's Web on Groupon.  AFI was CW Hemp's only distributor selling through Groupon.  (Doc. #22, ¶ 23.)  The Groupon account was particularly lucrative for AFI.  In June 2016, AFI's monthly gross sales of Charlotte's Web on Groupon were approximately $75,000.  (Id., ¶ 24.)

On July 1, 2016, defendants Lisa Spooner and Peter Busch were on-air anchors, and Graham Hunter was an on-air reporter for WBBH-TV, located in Fort Myers, Florida.  The station is owned and operated by Waterman Broadcasting.  (Doc. #22, ¶¶ 25-28.)  During WBBH-TV's 11:00 p.m. newscast on that date, defendants aired a segment about AFI and Charlotte's Web.  The segment identified defendant Joseph Dorn, M.D. as an "expert" on the subject.  (Id., ¶ 29.)

During the broadcast, defendants knowingly made false and/or reckless statements about AFI and Charlotte's Web in a way to sensationalize the story.  (Doc. #22, ¶ 30.)  Plaintiff alleges that defendants made the following statements: Ms. Spooner falsely claimed that Charlotte's Web was "medical marijuana" and that "200mg of Charlotte's Web Pot" could be purchased for "forty

bucks." She stated that "pot" and "medical marijuana' could now be purchased on Groupon via AFI. (Id., ¶ 31.) Mr. Busch falsely stated that "only five dispensaries in Florida are allowed to sell it under Florida law" in reference to the Charlotte's Web to imply AFI was violating Florida law. He also stated that "Graham Hunter spoke to an expert about how it's actually being sold in this ad" in referring to AFI's advertisement on Groupon. (Id., ¶ 32.) Mr. Hunter falsely claimed that "there's really no way to know exactly what's in this stuff without buying it and testing it." (Id., ¶ 33.) Mr. Hunter also provided misleading pictures and videos for the segment, and also conducted street interviews. (Id., ¶¶ 34-35.) Hunter stated that he contacted Groupon to notify it of the story and sent an email to AFI's owner when in fact the email was only sent to AFI two hours before airing the segment, asking: "What is your product?" and "How is this legal to dispense to the U.S.?" (Id., ¶ 40.) The segment was aired before receiving a response.

Particularly relevant to the instant Motion, plaintiff alleges that Dr. Dorn stated during the segment in reference to AFI that "somebody like this, they're not playing by the rules, so who in the world knows what they're selling." (Doc. #22, ¶ 36.) Plaintiff alleges that this implies that AFI was violating Florida law by selling Charlotte's Web in Florida via Groupon. (Id.)

As a result of the segment, Groupon discontinued all sales of Charlotte's Web on its website. (Doc. #22, ¶¶ 43-44.) Plaintiff

states that Groupon would not have known about the story but for Waterman and Mr. Hunter notifying it. (Id., ¶ 45.) AFI was the only distributor of Charlotte's Web on Groupon and following the July 1, 2016 segment, AFI's total sales were reduced to zero. (Id., ¶ 46.)

On July 14, 2016, Waterman posted an online statement retracting its July 1, 2016 story about AFI and Charlotte's Web, stating:

> On July 1, 2016 NBC-2.com published a story here about a (sic) Illinois based company called Happy Leaves selling a product called Charlotte's Web on Groupon.
>
> In our story we characterized the product as 'pot' and medical marijuana. It is not. According to their company, the product is derived from hemp and Charlott'e Web contains no illegal drugs or regulated drugs which require a special license to sell.
>
> The active ingredient in Charlotte's Web is called CBD (cannabidiol). CBD can be harvested from both hemp and cannabis. CBD oils harvested from hemp have very low levels of tetrahydrocannadion (THC) than those harvested from cannabis and are not regulated in any way.
>
> Oils made from Hemp CBD are much more accessible and can be bought from many outlets. We apologize for any confusion created by our story.

(Doc. #22, ¶ 47.) However, between the retraction and at least November 21, 2017, Waterman continued to publish defamatory statements and images about AFI Holdings on its Facebook page. (Id., ¶ 49.) As a result of defendants' statements that AFI was violating Florida law, sales of Charlotte's Web were devastated. (Id., ¶ 50.)

Plaintiff's Amended Complaint alleges defamation per se and commercial disparagement against all defendants (Counts I-VI). Plaintiff seeks $1,200,000 in damages, as well as punitive damages. Dr. Dorn moves to dismiss the defamation per se claim brought against him (Count V). The remaining defendants filed answers.

**II.**

A Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(citation omitted). To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." Id; See also Edwards v. Prime Inc., 602 F. 3d 1276, 1291 (11th Cir. 2010).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a Complaint as true and take them in the light most favorable to plaintiff, Erickson v. Pardus, 551 U.S. 89 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth," Mamani v. Berzain, 654 F. 3d 1148, 1153 (11th Cir. 2011)(citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. "Factual allegations that are merely consistent

with a defendant's liability fall short of being facially plausible." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (internal citations omitted). Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

### III.

Plaintiff's Amended Complaint includes one allegedly defamatory statement made by Dr. Dorn: "somebody like this, they're not playing by the rules, so who in the world knows what they're selling." (Doc. #22, ¶ 36.) In moving for dismissal, Dr. Dorn argues that this was a statement of pure opinion, not defamation. Dr. Dorn also argues that his statement does not satisfy as defamation per se because Dr. Dorn never actually referenced plaintiff or its product; rather, the statement was about a larger and undefined group of products. Further, Dr. Dorn never stated that any law had been violated, but argues that it is currently illegal to sell plaintiff's product in Florida. Plaintiff disagrees that it is currently illegal to sell Charlotte's Web in Florida and Dorn's statement that AFI was not "playing by the rules" implies that AFI was violating the law, which was false. However, plaintiff states that even if it is shown that Charlotte's Web has become illegal to sell in Florida since the broadcast,

that could go to damages, not the viability of AFI's claim against Dr. Dorn.

Defamation, which includes libel and slander[1], is generally defined as "the unprivileged publication of false statements which naturally and proximately result in injury to another." Wolfson v. Kirk, 273 So. 2d 774, 776 (Fla. 4th DCA 1973). Under Florida law, the elements of defamation are that a party (1) made a statement, (2) that was false, (3) to a third party, i.e., published the statement, and (4) plaintiff suffered damages as a result. Shaw v. R.J. Reynolds Tobacco Co., 818 F. Supp. 1539 (M.D. Fla. 1993), aff'd, 15 F.3d 1097 (1993); See also Alan v. Wells Fargo Bank, N.A., 604 F. App'x 863, 865 (11th Cir. 2015). "[T]he complaint need only state such words and that they were used in a defamatory manner," and the sufficiency of such a statement depends on whether the words were actionable per se. Id. (quoting Perez v. City of Key West, Florida, 823 F. Supp. 934, 938 (M.D. Fla. 1993). Malice is an additional component of a claim of defamation per se. See Alan v. Wells Fargo Bank, N.A., No. 14-80682-CIV, 2014 WL 11393570, at *2 (S.D. Fla. June 18, 2014) (per se defamatory statements are "so obviously defamatory" that malice and damages are presumed), aff'd, 604 F. App'x 863 (11th

---

[1] Slander is ordinarily confined to spoke defamatory statements, whereas libel pertains to written statements. Here, only slander is at issue.

Cir. 2015). Slander is actionable per se in a variety of circumstances under Florida law, but pertinent here are words that impugn a person's trade or profession. "Such words are actionable per se if by general consent their character is injurious e.g., conduct, characteristics or condition incompatible with the proper exercise of one's lawful business, trade, profession or office." Perez, 823 F. Supp. at 938 (citing Joopanenko v. Gavagan, 67 So. 2d 434 (1953)).

When bringing a defamation action premised on oral statements, a plaintiff must "set out the substance of the spoken words with sufficient particularity to enable the court to determine whether the publication was defamatory." Spitalny v. Insurers Unlimited, Inc., No. 2:05-cv-12-FTM-29SPC, 2005 WL 1528629, *3 (M.D. Fla. 2005). "Absent sufficient allegations, a claim for slander is properly dismissed for failure to state a cause of action." Fowler v. Taco Viva, Inc., 646 F. Supp. 152, 157-58 (S.D. Fla. 1986); see also Grigsby v. Rest. Mgmt. Svcs., Inc., No. 94-cv-1115-CIV-T-17E, 1994 WL 855090 (dismissing slander action for failure to state a claim when plaintiff neither alleged the words or substances of the alleged defamatory statements nor any actual damages resulting from such statements).

Here, hearing Dr. Dorn's statement, a person could reasonably understand it to implicate AFI's exercise of its business within the confines of the law. See Wolfson, 273 So. 2d

at 778 (concluding defamatory statement was actionable per se because it characterized plaintiff, a financier/businessman, as a "person with whom commercial relations were undesirable," and as such, was incompatible with plaintiff's ability to conduct a lawful business). Dr. Dorn's statement, "they're not playing by the rules" at a minimum implies to the listener that AFI is doing something improper by selling Charlotte's Web on Groupon in Florida, which by its nature is injurious to AFI. See Perez, 823 F. Supp. at 938. Such a statement could have a defamatory or harmful effect on AFI (and indeed did have such an effect). AFI has sufficiently pled the substance of Dr. Dorn's alleged false statement in the Amended Complaint, that it was made with actual malice, and described how the statement was injurious to plaintiff's profession, as well as the damages that occurred as a result. Dr. Dorn's argument that Charlotte's Web was in fact illegal at the time of the segment (a fact which the parties dispute), does not change that plaintiff has plausibly alleges that the statement was false at the time it was made.

Dr. Dorn's argument that he never directly identified AFI or its product during the segment does not compel a different result, as the Court may consider the facts and circumstances to the extent they might reasonably give meaning to the language used. Wolfson, 273 So. 2d at 778. Based upon plaintiff's recitation of the facts (which are incorporated by reference into Count V against Dr.

Dorn), the segment was about AFI and its Charlotte's Web product sold on Groupon. When Dr. Dorn stated "somebody like this" it clearly implies from the context of the segment that he was speaking of AFI.

Further, the Court does not find that Dr. Dorn's statement was an expression of pure opinion. Although statements of pure opinion are not actionable as defamation, Johnson v. Clark, 484 F. Supp. 2d 1242, 1247 (M.D. Fla. 2007) (citing Morse v. Ripken, 707 So. 2d 921, 922 (Fla. 4th DCA 1998)), courts distinguish between pure expressions of opinion and mixed expressions. Johnson, 484 F. Supp. 2d at 1247. "Pure opinion occurs when someone makes a comment or states an opinion based on facts which are set forth in the article or which are otherwise known or available to the reader or listener as a member of the public." Id. (citing From v. Tallahassee Democrat, Inc., 400 So. 2d 52, 57 (Fla. 1st DCA 1981)). "Mixed expression of opinion occurs when an opinion or comment is made which is based upon facts regarding the plaintiff or his conduct that have not been stated in the article or assumed to exist by the parties to the communication." Id. Whether a statement is one of opinion or one of fact (or a mixture of both) is a question of law. Keller v. Miami Herald Pub. Co., 778 F.2d 711, 715 (11th Cir. 1985) (citing From, 400 So. 2d at 56-57). Where the court finds that the statement in question is of mixed opinion and fact and reasonably capable of defamatory

interpretation, then a jury issue is presented. Johnson, 484 F. Supp. 2d at 1247.

Dr. Dorn's statement, considered in the context of the segment as a whole as alleged in the Amended Complaint, could qualify as a mixed expression of opinion and fact. Dr. Dorn's statement was not based purely on facts as set forth in the broadcast, and the statement implies the assertion of other undisclosed facts regarding plaintiff's compliance with Florida law by selling Charlotte's Web in Florida via Groupon. Of course, a jury may find that the "facts" upon which Dr. Dorn relied in support of his opinion were either incomplete or incorrect, but as alleged, plaintiff states a plausible claim for defamation per se.

Accordingly, it is now

**ORDERED**:

Defendant Joseph Dorn's Motion to Dismiss (Doc. #27) is **DENIED**.

DONE AND ORDERED at Fort Myers, Florida, this __22nd__ day of June, 2017.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
All parties of record